UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK) PLC,

**09 - 14061**

Plaintiff,

CASE NO. **CIV-MARTINEZ**

vs.

BRIAN O'DONNELL, and
BULLET AIR, INC.,

MAGISTRATE JUDGE
LYNCH

Defendants.

FILED by _AJS_ D.C.

FEB 2 4 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys, and for its Complaint seeking this Court's Declaratory Judgment would respectfully state as follows:

### JURISDICTION AND VENUE

1.  This is an action for declaratory relief pursuant to Title 28 of the United States Code, sec. 2201 et seq, in that a present controversy exists between the parties hereto in which the Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

2.  Venue lies within the Southern District of Florida as this cause arises out of a policy of marine insurance delivered

1

by Plaintiff to the Assured named therein, the Defendant BRIAN O'DONNELL, at 3355 S.E. Dixie Highway, Stuart, Florida 34997.

3.    This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, sec. 1333.

4.    Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, (hereinafter "GREAT LAKES") is a corporation organized and existing under the laws of the United Kingdom, with its office and principal place of business located in the United Kingdom, in the City of London.

5.    Upon information and belief, the Defendant BRIAN O'DONNELL (hereinafter "O'DONNELL") is a United States citizen and a resident of the State of Florida.

6.    Upon information and belief, the Defendant BULLET AIR, INC. (hereinafter "BULLET") is a corporation organized and existing under the laws of the State of Delaware.

### FACTUAL ALLEGATIONS

7.    On or about December 7, 2007, via his marine insurance broker, the Defendant "O'DONNELL" submitted to Plaintiff's underwriting manager an application seeking insurance coverage for a 1995 42 ft Thunderbird power vessel.

2

8.   A true and correct copy of the said application submitted to Plaintiff by and on behalf of the Defendant "O'DONNELL" is attached hereto as Exhibit "A."

9.   On the basis of and in reliance upon the material information disclosed in the application for marine insurance, Exhibit "A" attached hereto, the Plaintiff "GREAT LAKES" in exchange for good and valuable consideration agreed to issue a valued policy of marine insurance affording hull & machinery coverage for the one (1) year period from December 6, 2006 through December 7, 2007 in the amount of $180,000.00 on the 1995 42 ft Thunderbird power vessel which was alleged to be owned by the Defendant.

10.   A true and correct copy of the Cover Note for Plaintiff's Policy No. 200/658/83437 is attached hereto as Exhibit "B."

11.   On or about December 7, 2007, via his marine insurance broker, the Defendant "O'DONNELL" sought to renew the coverage afforded under Plaintiff's Policy no. 200/658/83437 and accordingly submitted to Plaintiff's underwriting manager a Renewal Questionnaire once again seeking insurance coverage for the 1995 42 ft Thunderbird power vessel.

12. A true and correct copy of the said Renewal Questionnaire submitted to Plaintiff by and on behalf of the Defendant "O'DONNELL" is attached hereto as Exhibit "C."

13. On the basis of and in reliance upon the material information disclosed in the application for marine insurance, Exhibit "A" attached hereto, and the Renewal Questionnaire, attached hereto as Exhibit "C," the Plaintiff "GREAT LAKES" in exchange for good and valuable consideration agreed to renew the valued policy of marine insurance affording hull & machinery coverage for the one (1) year period from December, 2007 through December 7, 2008 in the amount of $180,000.00 on the 1995 42 ft Thunderbird power vessel which was alleged to be owned by the Defendant O'DONNELL.

14. A true and correct copy of the Cover Note and policy language for Plaintiff's Policy No. 200/658/102170 is attached hereto as Exhibit "D."

15. On or about July 26 7, 2008, the Defendant O'DONNELL claimed via his brokers that the 2004 32 ft Solid twin engine vessel insured under the terms of Plaintiff's Policy no. 200/658/102170 had disappeared and was believed to have been stolen.

16. Upon receipt of the first notice of loss described herein, Plaintiff caused an investigation to be made into the

4

facts and circumstances surrounding the placement of the insurance and the alleged disappearance and theft of the vessel.

17. The said investigation undertaken by the Plaintiff established that at the time of the submission of the application for marine insurance coverage, and/or at the time of submission of the Renewal Questionnaire, the Defendant O'DONNELL failed to disclose the correct and accurate purchase price paid for the vessel.

18. The said investigation undertaken by the Plaintiff further established that at the time of the submission of the application for marine insurance, and/or at the time of submission of the Renewal Questionnaire, the Defendant O'DONNELL had failed to disclose that the vessel insured under Plaintiff's policy(ies) of marine insurance was in fact owned by the Defendant "BULLET."

19. The said investigation undertaken by the Plaintiff further established that at the time of the loss the vessel insured under Policy no. 200/658/102170 was located and was being stored and/or maintained at a location other than the location which had been disclosed in the application and/or the Renewal Questionnaire attached hereto.

20. The said investigation undertaken by the Plaintiff further established that recommendations set forth in a marine

survey which had been submitted along with and/or in conjunction with the application and/or the Renewal Questionnaire had in fact not been complied with, despite the Defendant "O'DONNELL's submission of a signed Letter of Compliance representing that full compliance had been accomplished.

21. Notwithstanding the facts established by the Plaintiff's said investigation, each of the Defendants named herein has made claim, or is reasonably believed that the Defendants will make claim, against the Plaintiff contending that he is entitled under the terms of Plaintiff's Policy No. 200/658/102170 to receive the proceeds of the policy limits.

## FIRST CAUSE OF ACTION

22. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 7 through 21 as if set forth fully herein.

23. Plaintiff's policy states, in pertinent part:

9.    General Conditions & Warranties

\*\*\*\*\*\*

d)    This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement

6

may be varied by us but only by our
prior written agreement.

    ******

n) This contract is null and void in the
event of non-disclosure or misrepresen-
tation of a fact or circumstances mater-
ial to our acceptance or continuance of
this insurance. No action or inaction
by us shall be deemed a waiver of this
provision.

24. The Defendants breached the provisions of Plaintiff's
policy set forth above by misrepresenting or by failing to
disclose facts and/or circumstances which were material to the
Plaintiff's decision to accept and/or to continue the risk of
insuring the 1995 42 ft Thunderbird power vessel owned by the
Defendants.

25. The Defendants misrepresented and/or failed to disclose
the correct and accurate purchase price paid for the vessel.

26. Had the Defendants disclosed the material facts or
circumstances referenced herein, the Plaintiff would not have
agreed to issue its Policy No. 200/658/102170, or would have
issued a different policy, or would have charged a higher premium
for the policy.

27. The Defendants' misrepresentation or failure to
disclose material facts or circumstances constitutes a breach of
the duties imposed upon the Defendants by the express terms of

7

the policy and under the applicable principles of federal maritime law.

28. Defendants' breach of the policy renders the said policy void *ab initio* and/or entitles the Plaintiff to rescind the policy.

29. Notwithstanding the lack of any coverage under the Plaintiff's policy of marine insurance, the Defendants have made demand upon Plaintiff for payment of the agreed value as set forth in the said policy.

30. As a result of the aforesaid lack of coverage under the terms of Plaintiff's policy of marine insurance attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's declaratory judgment regarding the coverage afforded under the terms of Policy No. 200/658/102170. Until such time as the Plaintiff is able to have its rights and responsibilities construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policy.

31. As a result of the Defendant's demands for payment under the terms of the attached policy of marine insurance, and as a result of the lack of any coverage for the alleged disappearance or theft of the vessel under the facts and circumstances described herein, a real and justiciable issue

8

exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a *bona fide*, actual and present dispute exists calling for this Court's declaratory judgment.

### SECOND CAUSE OF ACTION

32. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 7 through 21 as if set forth fully herein.

33. Plaintiff's policy states, in pertinent part:

9. General Conditions & Warranties

\* \* \* \* \* \*

d) This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

\* \* \* \* \* \*

n) This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

9

34. The Defendants breached the provisions of Plaintiff's policy set forth above by misrepresenting or by failing to disclose facts and/or circumstances which were material to the Plaintiff's decision to accept and/or to continue the risk of insuring the 1995 42 ft Thunderbird vessel owned by the Defendants.

35. The Defendants misrepresented and/or failed to disclose that the vessel insured under Plaintiff's Policy no. 200/658/102170 was actually owned by the Defendant BULLET.

36. Had the Defendants disclosed the material facts or circumstances referenced herein, Plaintiff would not have agreed to issue its Policy No. 200/658/102170, or would have issued an different policy, or would have charged a higher premium for the policy.

37. The Defendants' misrepresentation or failure to disclose material facts or circumstances constitutes a breach of the duties imposed upon the Defendants by the express terms of the policy and under the applicable principles of federal maritime law.

38. Defendants' breach of the policy renders the said policy void *ab initio* and/or entitles the Plaintiff to rescind the policy.

10

39.   Notwithstanding the lack of any coverage under the Plaintiff's policy of marine insurance, the Defendants have made demand upon Plaintiff for payment of the agreed value as set forth in the said policy.

40.   As a result of the aforesaid lack of coverage under the terms of Plaintiff's policy of marine insurance attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's declaratory judgment regarding the coverage afforded under the terms of Policy No. 200/658/102170. Until such time as the Plaintiff is able to have its rights and responsibilities construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policy.

41.   As a result of the Defendant's demands for payment under the terms of the attached policy of marine insurance, and as a result of the lack of any coverage for the alleged disappearance or theft of the vessel under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a *bona fide*, actual and present dispute exists calling for this Court's declaratory judgment.

11

## THIRD CAUSE OF ACTION

42. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 7 through 21 as if set forth fully herein.

43. Plaintiff's policy states, in pertinent part:

### 9.   General Conditions & Warranties

******

d)   This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

******

n)   This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

44. The Defendants breached the provisions of Plaintiff's policy set forth above by misrepresenting or by failing to disclose facts and/or circumstances which were material to the Plaintiff's decision to accept and/or to continue the risk of insuring the 1995 42 ft Thunderbird vessel owned by the Defendants.

12

45. The Defendants misrepresented and/or failed to disclose that the vessel insured under Plaintiff's Policy no. 200/658/102170 would regularly be stored and/or maintained at a location other than the location which had been disclosed in the application and/or the Renewal Questionnaire attached hereto.

46. Had the Defendants disclosed the material facts or circumstances referenced herein, Plaintiff would not have agreed to issue its Policy No. 200/658/102170, or would have issued an different policy, or would have charged a higher premium for the policy.

47. The Defendants' misrepresentation or failure to disclose material facts or circumstances constitutes a breach of the duties imposed upon the Defendants by the express terms of the policy and under the applicable principles of federal maritime law.

48. Defendants' breach of the policy renders the said policy void *ab initio* and/or entitles the Plaintiff to rescind the policy.

49. Notwithstanding the lack of any coverage under the Plaintiff's policy of marine insurance, the Defendants have made demand upon Plaintiff for payment of the agreed value as set forth in the said policy.

13

50. As a result of the aforesaid lack of coverage under the terms of Plaintiff's policy of marine insurance attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's declaratory judgment regarding the coverage afforded under the terms of Policy No. 200/658/102170. Until such time as the Plaintiff is able to have its rights and responsibilities construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policy.

51. As a result of the Defendant's demands for payment under the terms of the attached policy of marine insurance, and as a result of the lack of any coverage for the alleged disappearance or theft of the vessel under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a *bona fide*, actual and present dispute exists calling for this Court's declaratory judgment.

## FOURTH CAUSE OF ACTION

52. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 7 through 21 as if set forth fully herein.

14

53.   Plaintiff's policy states, in pertinent part:

9.     General Conditions & Warranties

\*\*\*\*\*\*

d)   This insuring agreement incorporates
in full your application for insurance
and it constitutes the entire contract
between us. At your request, various
provisions of this insuring agreement
may be varied by us but only by our
prior written agreement.

\*\*\*\*\*\*

n)   This contract is null and void in the
event of non-disclosure or misrepresen-
tation of a fact or circumstances mater-
ial to our acceptance or continuance of
this insurance. No action or inaction
by us shall be deemed a waiver of this
provision.

54.   The Defendants breached the provisions of Plaintiff's
policy set forth above by misrepresenting or by failing to
disclose facts and/or circumstances which were material to the
Plaintiff's decision to accept and/or to continue the risk of
insuring the 1995 42 ft Thunderbird vessel owned by the
Defendants.

55.   The Defendants misrepresented and/or failed to disclose
that that recommendations set forth in a marine survey which had
been submitted along with and/or in conjunction with the
application and/or the Renewal Questionnaire had in fact not been

15

complied with, despite the Defendant "O'DONNELL's submission of a signed Letter of Compliance representing that full compliance had been accomplished.

56.   Had the Defendants disclosed the material facts or circumstances referenced herein, Plaintiff would not have agreed to issue its Policy No. 200/658/102170, or would have issued an different policy, or would have charged a higher premium for the policy.

57.   The Defendants' misrepresentation or failure to disclose material facts or circumstances constitutes a breach of the duties imposed upon the Defendants by the express terms of the policy and under the applicable principles of federal maritime law.

58.   Defendants' breach of the policy renders the said policy void *ab initio* and/or entitles the Plaintiff to rescind the policy.

59.   Notwithstanding the lack of any coverage under the Plaintiff's policy of marine insurance, the Defendants have made demand upon Plaintiff for payment of the agreed value as set forth in the said policy.

60.   As a result of the aforesaid lack of coverage under the terms of Plaintiff's policy of marine insurance attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's

declaratory judgment regarding the coverage afforded under the terms of Policy No. 200/658/102170. Until such time as the Plaintiff is able to have its rights and responsibilities construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policy.

61. As a result of the Defendant's demands for payment under the terms of the attached policy of marine insurance, and as a result of the lack of any coverage for the alleged disappearance or theft of the vessel under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a *bona fide*, actual and present dispute exists calling for this Court's declaratory judgment.

WHEREFORE, Plaintiff demands Judgment from the Court:

(A) Declaring that the relationship of insurer and insured does not exist between Plaintiff and Defendants as regards the alleged disappearance or theft of the 1995 42 ft Thunderbird power vessel referred to herein;

17

(B)   Declaring that Plaintiff's Policy No. 200/658/102170 does not afford any coverage to the Defendants for the alleged disappearance or theft of the vessel referred to herein;

(C)   Declaring that Defendants' misrepresentations of and/or failure to disclose facts material to the Plaintiff's acceptance or continuance of the risk voids the Plaintiff's Policy No. 200/658/102170 *ab initio* and allows the Plaintiff to rescind the said policy;

(D)   Any and all such other and further relief as the Court may deem proper in the premise

Dated:     February 24, 2009
           Fort Lauderdale, Florida

                              GOLDMAN & HELLAMN
                              Attorneys for Plaintiff
                              800 S.E. 3rd Avenue
                              4th Floor
                              Fort Lauderdale, Florida 33316
                              Tel (954) 356-0460
                              Fax (954) 832-0878


                         By: _____
                              STEVEN E. GOLDMAN, ESQ.
                              FLA. BAR NO. 345210

Dec 07 06 03:24p                                                                 p.2

**YACHT APPLICATION**        www.special-risks.co.uk

| INSUREDS NAME: Brian O'Donnell | INSUREDS D.O.B. 8/20/1976 | PRODUCER NAME & ADDRESS: |
|---|---|---|
| BENEFICIAL OWNER (REQUIRED IF POLICY IS IN A COMPANY NAME) | | Cronin Insurance 1795 AA W. Palmetto Park Boca Raton, Fl. 33428 561-479-1898 |
| FULL MAILING ADDRESS: 3355 SE Dixie Hwy Stuart, Fl. 34997 | | |
| OCCUPATION: Fantastic Plastic (Owner) | | LOSS PAYEE – NAME & ADDRESS: |
| VESSEL NAME: Pausenan | | |
| EFFECTIVE DATE FROM 11/29/06 TO 11/29/07 | | |
| IF LAID UP: LOCATION: Same | | |
| FROM:          TO:     ☐ ASHORE  ☐ AFLOAT | | |

COVERAGES WILL NOT BE PROVIDED UNLESS REQUESTED HEREON

| COVERAGES | SUM INSURED | EQUIPMENT | | PRIMARY POWER (IF OTHER DETAIL): | | SAIL | |
|---|---|---|---|---|---|---|---|
| HULL - PHYSICAL DAMAGE | 180,000 | BILGE PUMPS | | GENERATOR DIESEL/GAS | | OUTBOARD | |
| TENDER/DINGHY | | COOKING STOVE | | SHIP TO SHORE RADIO | | INBOARD | X |
| PERSONAL PROPERTY | 2500 | FLAME DETECTOR | | SATNAV/ OMEGA | | INBOARD/ OUTDRIVE | |
| TRAILER | 15000 | CO2/HALON SYSTEM | | LIFE RAFT | | OTHER | |
| MEDICAL PAYMENTS | 5000 | FIRE EXTINGUISHERS | | OTHER (LIST BELOW) | | SAILBOAT | |
| LIABILITY COVERAGE | 300,000 | ANTI-THEFT DEVICES | | | TYPE OF VESSEL (IF OTHER DETAIL): | MOTOR YACHT | |
| | | LORAN/ DIRECTION FINDER | | | | SPORTSFISHER CRUISER | |
| CREW LIABILITY | | | | | | PERFORMANCE | X |
| OWNER OPERATOR M&C | | DEPTH SOUNDER | | | | HOUSEBOAT | |
| COMMERCIAL PASSENGER LIABILITY | | RADAR | | HULL MATERIAL (IF OTHER DETAIL): | X | FIBREGLASS | |
| | | | | | | STEEL | |
| UNINSURED BOATERS | 25000 | SONAR | | | | ALUMINIUM | |
| | | | | | | WOOD | |
| BREACH OF WARRANTY (FOR LOSS PAYEE ONLY) | | EPIRB | | | | KEVLAR | |
| | | | | | | CARBON FIBRE | |
| NON-EMERGENCY TOWING | | GPS | | TYPE OF HULL (IF OTHER DETAIL) | X | MONOHULL | |
| | | | | | | CATAMARAN | |
| OTHER | | ENGINE ALARM | | FUEL TANK | X | METAL | |
| | | | | | | FIBREGLASS | |

VESSEL INFORMATION

| YEAR | LENGTH | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE | MAX SPEED | HULL IDENTIFICATION NO: |
|---|---|---|---|---|---|---|
| 96 | 42 | 12/2004 | 180,000 | 180,000 | 38 | TNRD5680L596 |

| REGISTRATION NO: | VESSEL FLAG: | MANUFACTURER/MODEL: FORMULA |
|---|---|---|
| ANTI-THEFT PRECAUTIONS: | | MAIN MOORING/STORAGE LOCATION (FULL ADDRESS): 3355 SE Dixie Hwy. Stuart, Fl. 34997 |

Ex. "A"

Dec 07 06 03:24p

p.3

**YACHT APPLICATION**  www.special-risks.co.uk

TENDERS OR DINGHIES:

WATERS TO BE NAVIGATED (YOU MAY ATTACH AN ITINERARY- PLEASE NOTE EXTENDED NAVIGATION REQUIRES SUPPLEMENTARY SHEET):

U.S Coastal Waters + Bahamas

VESSEL LOCATION JULY 1ST - NOV 1ST (INCLUDING CO-ORDINATES IF KNOWN)

3355 S E Dixie Hwy   Stuart Fl. 34997

ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | GASOLINE | DIESEL | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|---|
| 1 | 4.5 | | | | 11/04 | Inc. | |
| 2 | 4.5 | | | | 11/04 | Inc. | Inc. |
| 3 | 4.5 | | | | 11/04 | Inc. | Inc. |

| | MANUFACTURER/MODEL | | SERIAL NUMBER |
|---|---|---|---|
| 1 | Mercruiser | | OE802 7704 3/23 |
| 2 | Mercruiser | | OF 8027 6943125 |
| 3 | Mercruiser | | OFB027444 21210 |

| DATE VESSEL LAST SURVEYED | ASHORE/AFLOAT | HAS SURVEY BEEN SUPPLIED TO UNDERWRITER: Y/N |
|---|---|---|
| 6/17/2006 | Ashore | |

| TRAILER INFORMATION | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|
| MANUFACTURER/MODEL: | 2006 | 01/2006 | 15000 | 15000 |
| | | | SERIAL NUMBER: | |

OPERATORS (ALWAYS LIST INSURED AS OPERATOR #1) ALL OPERATORS MUST BE DETAILED – USE SEPARATE SHEET IF NECESSARY
PLEASE NOTE THIS OPERATORS INFORMATION CONSISTS OF THREE PARTS (A, B & C)

| A | NAME | D.O.B. | STATE OF RESIDENCE | VIOLATIONS&SUSPENSIONS (INCLUDING AUTO) IN LAST 5 YEARS |
|---|---|---|---|---|
| 1 | Brian O'Donnell | 8/30/1976 | Florida | Speed 7/03 |
| 2 | | | | Red 4/05 |
| 3 | | | | Speed 8/05 |

| B | BOATING QUALIFICATIONS | YEARS OF BOAT OWNERSHIP | YEARS OF BOATING EXPERIENCE |
|---|---|---|---|
| 1 | Owner/Fabricator | 15 | 20 |
| 2 | | | |
| 3 | | | |

| C | DETAILS OF PREVIOUS VESSELS OWNED |
|---|---|
| 1 | |
| 2 | |
| 3 | |

GENERAL INFORMATION – IF YOU ANSWER 'YES' TO ANY OF THE QUESTIONS BELOW PLEASE GIVE FULL DETAILS ON NEXT PAGE

| # | | YES | NO | # | | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | | X | 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | | X |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | | X | 7 | WILL THE VESSEL BE OPERATED SINGLE HANDED AT NIGHT?? | | X |
| 3 | WILL THE VESSEL BE USED FOR RACING DURING THE POLICY PERIOD? | | X | 8 | HAVE YOU OR ANY NAMED OPERATOR BEEN INVOLVED IN A MARINE LOSS IN THE LAST 10 YEARS (INSURED OR NOT)? | | X |
| 4 | IS THE BOAT USED FOR WATER SKIING OR DIVING WHETHER OR NOT VESSEL IS OPERATED COMMERCIALLY | | X | 9 | WAS ANY INSURANCE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | | X |
| 5 | IS THE BOAT USED FOR FARE PAYING PASSENGERS? IF YES: | | X | 10 | DOES THE APPLICANT EMPLOY PAID CREW? | | X |
| | WHAT IS THE NUMBER OF PASSENGERS PER TRIP (MAXIMUM & AVERAGE) | MAX 4 | AVG 4 | | IF SO, HOW MANY? | | X |
| | NUMBER OF TRIPS PER YEAR | | 48 | 11 | DOES ANYONE RESIDE ABOARD THE VESSEL? | | X |

Dec 07 06 03:24p

p.4

# YACHT APPLICATION

www.special-risks.co.uk

## GUIDANCE NOTES:

| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? *No* | |
|---|---|---|
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? *No* | Please complete supplementary sheet CAPTAIN CHARTER |
| 3 | WILL THE VESSEL BE USED FOR RACING DURING THE POLICY PERIOD? *No* | Please complete supplementary sheet BAREBOAT CHARTER |
| 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? *No* | Please complete supplementary sheet RACING |
| 10 | DOES THE APPLICANT EMPLOY PAID CREW? *No* | Please detail usage in Information Box below |
| | | Please complete supplementary sheet CREW |

INFORMATION (IF THIS SPACE IS NOT SUFFICIENT PLEASE NOTE BELOW AND USE A SEPARATE SHEET):

## PLEASE READ BEFORE SIGNING APPLICATION

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein.

2. Any misrepresentation in this application for insurance will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

3. A photograph of the vessel is required to be submitted with this application.

4. Fraud Statement – please see page 4 of this application form & initial the paragraph relevant to you to indicate that you have read and understood this.

| APPLICANT SIGNATURE: | PRINT NAME & STATE YOUR CONNECTION TO THIS POLICY IF YOU ARE NOT THE NAMED INSURED/BENEFICIAL OWNER | SIGNATURE DATE: |
|---|---|---|
| | BRIAN O' DONNELL | 12/7/2006 |



**Cover Note**

Policy No: 200/658/83437

**T L Dallas**
**(Special Risks) Ltd.**

Dalesway House,
South Hawksworth Street
Ilkley, LS29 9LA, UK
Tel: 01943 811000
Fax: 01943 601854/75

In accordance with your instructions we have effected the following cover on your behalf subject to the terms and conditions in the policy wording and endorsements attached.

| Assured: | Producer: |
|---|---|
| Brian O'Donnell | Houlder Insurance Services (Marine) |
| 3355 SE Dixie Hwy | Cutlers Exchange |
| Stuart | 123 Houndsditch |
| FL 34997 | London |
| | EC3A 7PQ |

| Vessel Name: | Causeican | Model: | Performance Boat |
|---|---|---|---|
| Year: | 1996 | Maker: | Formula |
| ID Number: | TNRD5680L596 | Length: | 42 ' |
| Engines: | Gasoline | Type: | Mercruiser Triple 415hp |

**Period of Cover:** From December 07, 2006 00.01 LST to December 07, 2007 00.01 LST

**Cover and Respective Insured Limits:**

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A. Hull | US$ 180,000 | US$ 5,400 |
| Tender | Not Covered | |
| B. P + I | US$ 300,000 | US$ 500 |
| Crew Liability | Not Covered | |
| C. Medical Payments | US$ 5,000 | US$ 100 |
| D. Uninsured Boaters | US$ 25,000 | US$ 500 |
| E. Trailer | US$ 15,000 | US$ 1,500 |
| F. Personal Property | US$ 2,500 | US$ 250 |

**Total Premium:** US$ 8,075.00 C.R.O. + US$ 25.00 Certificate Fee

In the event of cancellation by the Assured minimum of 25% of premium deemed earned. All fees earned at inception.

Ex. "B"

Continuation Cover Note for Policy No: 200/658/83437 : Page 2

| | |
|---|---|
| **Laid Up Period:** | None. |
| **Navigational Limits:** | East Coast USA and the Bahamas - Not to exceed 35 miles offshore. |
| **Conditions:** | As per TLD/5/PPO. Warranted Private and Pleasure use only. |
| **Warranties:** | Warranted not South of Tropic of Cancer. |
| **Endorsements:** | None. |

**Security as approved and agreed by you:**

| | | |
|---|---|---|
| | **Hull:** | 100% Great Lakes Reinsurance (UK) plc per Belmarine SA per contract 200/658. |
| | **P&I:** | 100% Great Lakes Reinsurance (UK) plc per Belmarine SA per contract 200/658. |
| **Loss Payee:** | | Assured |

**Date:**   Monday, December 11 2006

..............................................................................

For and on behalf of Participating Underwriters

Dec 12 07 11:34a     CRONIN INSURANCE AGENCY              561-479-1386              p.2

Dec 11 2007 1:18PM   CIA                          5614791386                    p.1
12/03/07 18:33:18 From:954-524-0479      To:15614791385      Hull & Company     Page:004/7

**Form 2: TLD Renewal Questionnaire**

## RENEWAL QUESTIONNAIRE

Previous Declaration Number _____

Name of Insured (as it appears on policy) **Brian O'Donnell**

1)  Do you require any changes in coverage limits?  Below are your current coverages, please indicate changes required by filling in the next column.

CURRENT COVERAGE   REVISED COVERAGE

| | CURRENT COVERAGE | REVISED COVERAGE | |
|---|---|---|---|
| HULL VALUE: | 180,000 | | |
| HULL DEDUCTIBLE: | 5,400 | 7,200 | * change |
| LIABILITY: | 300,000 | | |
| MEDICAL PAYMENTS: | 5,000 | | |
| PERSONAL EFFECTS: | 2,500 | | |
| DINGHY/TENDER: | not covered | | |
| OTHER (PLEASE SPECIFY) | 15,000 | | |
| | trailer | | |

2)  Have you added or deleted any navigational or safety equipment this year?  If so please advise us of these items.

New GPS

3)  Are there any new crew members/operators on your vessel? If so, please advise age, experience and details of licences held &/or boating courses taken.  (If you need more room, please use the back of this page.)

NO

4)  Will your vessel be your full-time residence during the next policy period?  Please circle as appropriate:      YES   OR   (NO)

5)  Please advise date of last survey   June 06

IN  /  (OUT)  of water?     (Circle as appropriate)

6)  Please give details of any further changes, e.g. Navigational limits

In order that we may make the required amendments to your renewal policy, we must have your signature giving us permission to do so.

Form6



Dec 12 07 11:35a      CRONIN INSURANCE AGENCY                    561-479-1386                    p.3

12/03/07 18:33:46   From:954-524-0479      To:15614791386      Hull & Company      Page:005/7

## Form 2: TLD Renewal Questionnaire

Any misrepresentation in this application for renewal of insurance will render insurance coverage
null and void from inception. Please therefore check to make sure that all questions have been fully
answered and that all facts material to your insurance have been disclosed, if necessary by a
supplement to the application.

_____                        12-11-7
Insured's signature                            Date

Forms

P.02                                           DEC-11-2007  13:42

**TL Dallas**
**(Special Risks) Ltd.**

# Policy Schedule
Policy No: 200/658/102170

Dalesway House
South Hawksworth Street
Ilkley, LS29 9LA, U.K.
Tel: 01943 811000
Fax: 01943 601854/75

December 13, 2007

| Assured: | Assured's Agent: |
|---|---|
| Brian O'Donnell<br>3355 SE Dixie Hwy<br>Stuart<br>FL 34997 | Houlder Insurance Services (Marine)<br>Cutlers Exchange<br>123 Houndsditch<br>London<br>EC3A 7PQ |

| | | | |
|---|---|---|---|
| **Vessel Name:** | Causeican | **Model:** | Sport Boat |
| **Year Built:** | 1995 | **Maker:** | Thunderbird |
| **ID Number:** | TNRD5680L596 | **Length:** | 42 |
| **Engines:** | Gasoline | **Type:** | Mercruiser Triple 450hp |

**Period of Cover:** From December 07, 2007 00.01 LST to December 07, 2008 00.01 LST

## Cover and Respective Insured Limits:

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A.Hull | US$ 180,000 | US$ 7,200 |
| Tender | Not Covered | |
| B. P&I | US$ 300,000 | US$ 2,500 |
| Crew Liability | Not Covered | |
| C. Medical Payments | US$ 5,000 | US$ 100 |
| D. Uninsured Boaters | US$ 25,000 | US$ 500 |
| E. Trailer | US$ 15,000 | US$ 1,500 |
| F. Personal Property | US$ 2,500 | US$ 250 |

**Total Premium:** US$ 8,760.00 C.R.O + US$ 25.00 Certificate Fee.

In the event of cancellation by you a minimum of 25% of premium deemed earned. All fees earned at inception.



Ex. "D"

Continuation Policy Schedule for Policy No: 200/658/102170 : Page 2

| | |
|---|---|
| **Named Operators:** | Brian O'Donnell |
| **Laid Up Period:** | None. |
| **Navigational Limits:** | East Coast USA and the Bahamas - Not to exceed 35 miles offshore. |
| **Policy Wording:** | As per TLD/5/PPO. Warranted Private and Pleasure use only. |
| **Warranties:** | Warranted not South of Tropic of Cancer. Warranted that when under way the vessels maximum speed will not to exceed 58mph. Warranted no known or reported losses as at 12th December 2007. |
| **Endorsements:** | None |

**Insurer/Security as approved and agreed by you:**

|  |  |  |
|---|---|---|
| **Hull:** | 100% Great Lakes Reinsurance (UK) PLC. |
| **P&I:** | 100% Great Lakes Reinsurance (UK) PLC. |
| **Loss Payee:** | Assured |

**Date:** Thursday, December 13, 2007

..............................................................................
For and on behalf of Participating Underwriters/Insurers

For information regarding T L Dallas (Special Risks) Ltd, policy wordings, endorsement wordings, standard forms & frequently asked questions please see our website www.special-risks.co.uk.

# PRIVATE AND PLEASURE YACHT INSURING AGREEMENT WORDING

## 1. DEFINITIONS

a)   'You and your' refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the scheduled vessel or as an additional assured.

b)   'We, us and our' refer to the insurers named on the declaration page or accompanying schedule of insurers.

c)   'Covered person' means you, and/or any person detailed on your application form which has been submitted and approved by us, provided that person has been declared to us as an operator of the scheduled vessel.  This does not include either a paid captain and/or crew, or a person or organisation, or their employee or agent, operating a marina, boatyard, yacht club, charter operation, sales agency, refuelling dock or similar organisations, unless you have our agreement in writing to the contrary.

d)   'Scheduled vessel' means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the scheduled vessel ,which would normally be sold with the vessel. This does not include the vessel's life raft, tender or dinghy unless the same as is declared on the declaration page, nor does it include any items being stored on premises other than onboard the scheduled vessel.

e)   'Trailer' refers to the insured vessel's trailer, used exclusively for that purpose.

f)   Words of a masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g)   'Navigational limits' means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h)   'Salvage charges' means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section "A" of your insuring agreement.

i)   'Deductible' deductible is the first amount of any claim, which must be paid by you.  If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount will be deducted from the amount payable on each admissible claim.

j)   'Bodily injury/property damage' means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the vessel.

k)   'Seaworthy' means fit for the Scheduled Vessel's intended purpose.  Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew.  For the scheduled vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l)   'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m)   'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled vessel.

n) 'Race or speed trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies. "Preparing for a race or speed trial," means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o) 'Named Windstorm' damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the "named windstorm" or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the 'named windstorm' or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p) 'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q) 'Operating' means to navigate or to be in physical control of or to be at the helm of the scheduled vessel.

r) 'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged underwater.

s) 'Abandoned' means where you have left the scheduled vessel, unattended, whether intentionally or otherwise, whether written notice of the same has been tendered or otherwise, and where there is no damage to the scheduled vessel that would give rise to a payable claim hereunder.

t) 'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the scheduled vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or damage to the scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss incurred and covered by this insuring agreement will be paid by us. These will be paid in addition to the sum insured under Sections A and F. Our maximum liability for these expenses is 50% of the sum insured under Section A of this insuring agreement less the deductible shown under Sections A and F.

We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

If the Insured vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person.

A deductible of 10% of the agreed hull value of the scheduled vessel and/or equipment shall apply to each theft loss, including constructive or total loss of the Scheduled vessel.  However a deductible of 5% of the agreed hull value of the scheduled vessel shall apply to each theft loss, including constructive or total loss, provided the scheduled vessel is stored and/or moored in a commercial storage yard or marina that provides 24 hour security.

The deductible shown under Section A of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the scheduled vessel, unless caused by theft when the deductible as referred to above shall apply or arising from a named windstorm when the deductible detailed below shall apply.

Loss or damage to the scheduled vessel arising from a Named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including Actual and/or Constructive and/or Compromised Total Loss of the insured vessel, equal to double the deductible as shown on the declaration page under section A and/or F of the insuring agreement.

## Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses and or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

a)    Damage sustained by scheduled vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 100 miles from the normal place of storage, as disclosed within your application form.

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c)    Marring, scratching or denting of the hull and/or equipment of the scheduled vessel.

d)    Osmosis, blistering or electrolysis.

e)    The costs of replacing or repairing any item of equipment which has failed as a result of manufacturing defects or design defects, including latent defects.

f)    Unrepaired damage claims if the scheduled vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g)    Losses caused directly or indirectly by ice or freezing.

h)    Loss or damage caused intentionally by you and or any member of your family

i)    Theft of the scheduled vessel's equipment whilst afloat unless there is visible evidence of forcible entry onto the scheduled vessel and removal of the same, made by tools, explosives, electricity or chemicals.

j)      Theft of the dinghy or tender and/or its outboard motor to the insured scheduled vessel unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

k)      Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals

l)      Loss and/or damage to the dinghy and/or tender and/or its outboard motor whilst being towed behind the scheduled vessel or as a consequence of being towed behind the scheduled vessel.

m)      Damage to the scheduled vessel or tender caused by theft, and/or attempted theft unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

n)      Your personal expenses or those of your family including but not limited to the, cost of your own labour, hotel or accommodation costs, car rental and communication costs.

o)      Losses caused by delay and or loss of use and or enjoyment of the scheduled vessel and/or its equipment.

p)      Any loss of value of the Scheduled vessel and or its equipment as a result of repairs and or replacements being effected as a result of any claim hereunder.

q)      Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

r)      Loss or damage to the scheduled vessel and/or its equipment where you have abandoned the scheduled vessel.

s)      Damage and or loss to the scheduled vessel and/or its equipment caused by the officers, employees, agents, servants or independent contractors of any repair yard or marina.

t)      Loss of or damage to the scheduled vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the scheduled vessel by any repair yard.

## 4. Coverage B.  Third Party Liability

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of the scheduled vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice where we deem necessary.  Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a)      Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)     Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c)     Liability assumed by you under any contract or agreement.

d)     Liability which arises while the scheduled vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)     Fines or penalties imposed by any Government agency.

f)     Punitive or exemplary damages, however described.

g)     Liability due to pollution by any substance whether it be gradual, or sudden and accidental.

h)     Intentional acts.

i)     Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

j)     Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)     Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the scheduled vessel, until they are safely back on board, other than that provided under limited extension of liability for waterskiing detailed below.

l)     Liability to or for divers operating from the scheduled vessel, from the time they commence to leave the scheduled vessel, until they are safely back on board.

m)     Liability to fare paying passengers or passengers carried under charter.

n)     Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)     Loss or damage to any other vessel caused by the operation of the scheduled vessel in so far as the same would have been covered under section 'A' of this insuring agreement.

p)     Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the suns rays either cumulatively or suddenly.

q)     Any claim arising from directly or indirectly caused by or associated with Human T-Cell Lymphotropic Virus type III (HILV II) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

## Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits relating to this activity are reduced to:

|                          |             |
|--------------------------|-------------|
| Property damage          | US $10,000  |
| Bodily Injury            | US $10,000  |
| Maximum any one incident | US $20,000  |

These limits shall apply from the time any person or persons begin to leave the scheduled vessel, or such activity commences, and will continue until the person or persons are safely back on board and

such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion k) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability.

## Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the scheduled vessel.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability. All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion i) and j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

## Coverage B, Extension to include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (g) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

a)      Was sudden, unintentional and unexpected by you.

b)      That the incident commenced during the period of this insuring agreement.

c)      It became known to you within 72 hours of its commencement.

d)      Was reported to us in writing not later than seven days after having become known to you.

e)      Was not a result of your want of due diligence of that or your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

The maximum amount recoverable under this section shall be US$50,000 less the policy deductible detailed under Section B. These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability.

## 5. Coverage C, Medical Payments

If a sum insured is shown under Section C of the insuring agreement declaration page, we will pay reasonable medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or onboard the scheduled vessel insured under this insuring agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Section B of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

TLD/5/PPO

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved.  Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

### Exclusions to Coverage C

We do not provide medical payment coverage for:

a)     Covered persons, their spouses, family or other persons who reside with them.  Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)     Responsibility assumed under any contract or agreement.

c)     Anyone injured whilst the scheduled vessel is being transported, hauled out or launched.

d)     Trespassers on the scheduled vessel.

e)     Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under Section D of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

### Exclusions to Coverage D

We do not provide coverage for:

a)     Claims settled without our prior written consent.

b)     Loss due to an uninsured vessel which is a Government vessel.

c)     Loss due to a vessel operated by a covered person.

d)     Loss where no physical damage to the scheduled vessel exists, evidencing collision.

## 7. Coverage E, Trailer

If a sum insured is shown under Section E of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer provided it is used exclusively for the transportation of the scheduled vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value.  Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under Section E without application of the insuring agreement deductible. Our maximum liability for such expenses is 50% of the sum insured under Section E.

The deductible shown on the insuring agreement declaration page shall apply to each claim under this section of the insuring agreement.

### Exclusions to Coverage E

a)    Damages sustained by the trailer whilst the scheduled vessel is being transported over land, more than 100 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c)    Marring, scratching or denting.

d)    Manufacturing defects or design defects, including latent defects.

e)    Tyre damage.

f)    Losses due to exceeding manufacturer's maximum load or speed specifications.

g)    Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h)    Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

## 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the scheduled vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$1,000.

Fishing gear and tackle, unless permanently affixed to the scheduled vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the scheduled vessel, we will only pay claims in the ratio that such sum insured bears to the overall actual cash value of the covered property situate on the scheduled vessel at the time of the covered loss.

### Exclusion to Coverage F

a)    Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b)    Fishing gear or tackle which is permanently affixed to the scheduled vessel, unless the scheduled vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

We will not cover losses due to:

a) Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b) Breakage of articles of a brittle nature unless caused by the scheduled vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c) Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the scheduled vessel.

d) Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

## 9. General Conditions & Warranties

a) It is warranted that the scheduled vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b) It is warranted that the scheduled vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception

c) This insuring agreement incorporates in full your application for insurance and, together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

d) This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the scheduled vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the scheduled vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

e) This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated at pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied. Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

f) If you sell or pledge the scheduled vessel or otherwise transfer ownership in part or in full, or give up possession of the scheduled vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

g) In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

h) If you have used a Broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

i)     We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

j)     It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the scheduled vessel.

k)     If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

l)     If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

m)     This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

n)     We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under extension of Section B Limited Pollution Coverage) iii) War declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these. iv) Capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

o)     If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

p)     If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

q)     Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

r)     Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the scheduled vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either.

1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

Or,

2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

s)     In no event shall this insurance cover any loss, damage, expense or liability of whatever nature, which might otherwise be recoverable under this insuring agreement arising out of or in any way connected with, whether directly or indirectly, the use or operation of any computer, computer system, computer software, programme or process or any electronic system where any such loss, damage, expense or liability arises directly or indirectly, as a consequence of a) the date change to the year 2000 or any other date change and/or b) any change or modification of or to any such computer, computer system, computer software, programme or process or any electronic system in relation to any such date change.

t)   The scheduled vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible .Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows;

i)      Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum
ii)     Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum
iii)    Sails, standing and running rigging - 12.5% per annum
iv)     Internal and/or external protective covers, canvas, vinyl and other materials - 20% per annum
v)      Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum
vi)     Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum
vii)    Outboard Motors - 20% per annum
viii)   Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers  - 20% per annum
ix)     Batteries and solar charging panels - 20% per annum
x)      Electrical equipment including but not limited to internal and external appliances, winches, pump motors and electric deck gear  - 10% per annum.
xi)     Mast and spars – 5% per annum.
xii)    Stanchions and lifelines – 10% per annum.
xiii)   Inflatable, tenders or dinghies – 12.5 % per annum.
xiv)    Hard FRP, composites, aluminium or wood tenders or dinghies – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciated value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

We have the right to settle any physical loss or damage claim under this insuring agreement, either by making payment to you of the estimated loss agreed between you and us, or by making repairs or replacements, like with like, for your lost or damaged property.

u)   No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such state.

v)   Where a lay up 'laid up period' has been specified within the declaration page, it is warranted that the scheduled vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.   "Use" includes, but is not restricted to, living on board the scheduled vessel.

w)   It is warranted that the scheduled vessel will be operated only by covered persons.

**TLD/5/PPO**                                                                 **Page 11 of 13**

x) Where you are entitled to limit your liability to third parties the maximum recoverable under section 4 coverage B, third party liability herein, is the amount you become legally liable to pay or the limit of coverage shown under "Section B" of the insuring agreement declaration page ,whichever is the lesser amount.

y) Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

## 10. Your Duties In The Event Of A Loss

1) Immediately take all possible steps to minimise the loss and protect the scheduled vessel from further loss. Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2) Within 14 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances.

3) Comply with any reasonable request made of you, by us with regard to the loss.

4) Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5) Give us an opportunity to examine the damaged property before it is repaired or discarded.

6) Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7) Neither assume obligation, nor admit liability without our written permission to do so.

8) Immediately forward to us any legal papers or notices received in connection with the loss.

9) Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request

10) Allow examination by physicians of our choice.

11) Assist us in obtaining copies of medical records and reports.

12) Give us a notarised statement or statutory declaration if we so request.

13) Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14) Preserve any right of recovery from others, When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit Clause

It is agreed that in the event of the failure of the Underwriters severally subscribed to this insurance (The Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver

**TLD/5/PPO**                                                                                     **Page 12 of 13**

of the Underwriters right to remove an action to the United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any State therein.
Subject to the Underwriter's rights set forth above:

a)      It is further agreed that the Assured may serve process upon any senior partner in the firm of:

LeBoeuf, Lamb, Greene & MacRae
125 West 55th Street
New York, NY 10019-5389

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)      The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

c)      The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account.  For the purpose of suit as herein provided the word Assured includes any mortgage under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgage.

d)      Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

Clause 11 above is subject, in all respects to clause 12 hereafter.

## 12. CHOICE OF LAW

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

This wording is the property of T L Dallas (Special Risks) Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of T L Dallas (Special Risks) Ltd.  T L Dallas (Special Risks) Ltd will seek legal redress from any person or persons found to have infringed their copyright.

℣JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**09 - 14061**

## I. (a) PLAINTIFFS

GREAT LAKES REINSURANCE (UK) PLC

## DEFENDANTS

BRIAN O'DONNELL and BULLET AIR, INC.

**(b)** County of Residence of First Listed Plaintiff   United Kingdom
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Martin County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Steven E. Goldman, Esq., Goldman & Hellman
800 S.E. 3rd Ave., 4th Floor, Ft. Lauderdale, FL 33316
(954) 356-0460

**CIV-MARTINEZ**

Attorneys (If Known)

**MAGISTRATE JUDGE LYNCH**

FILED by _AJS_ D.C.

FEB 24 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. - MIAMI

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ✔ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

09 - CV - 14061 - Martinez / Lynch

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

✔ 3   Federal Question (U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ✖ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN  (Place an "X" in One Box Only)

✔ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ✔ NO      b) Related Cases ☐ YES ✔ NO

JUDGE                                   DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Marine insurance declaratory judgment action, 28 USC sec. 2201 et seq

LENGTH OF TRIAL via _3-4_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ✔ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
February 24, 2009

FOR OFFICE USE ONLY

AMOUNT $350.00   RECEIPT # 995719

02/24/09